**Joseph John TRITT, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4983.**

Court of Appeals of Alaska.

March 26, 1981.

Valerie M. Therrien, Fairbanks, for appellant.

Bill D. Murphree, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

This is an appeal brought by Joseph John Tritt from a three-year term of imprisonment imposed after revocation of his probation on a three-year suspended sentence for maliciously damaging an aircraft.[1] Tritt argues that the sentence imposed violates his double jeopardy rights[2] and, alternatively, that it is excessive.

### I

### THE FACTS

In 1976, Tritt, then eighteen years old, became intoxicated and stabbed another person, inflicting near-fatal injuries. Upon conviction in early 1977 of assault with a dangerous weapon (ADW), imposition of Tritt's sentence was suspended, and he was placed on probation for three years. Later in 1977, again while intoxicated, Tritt maliciously damaged an aircraft in Arctic Village, where he lived. Tritt was eventually convicted and sentenced, in April of 1978, to a three-year term of imprisonment, all of which was suspended. He was placed on probation, conditions of which required him to pay restitution and to enroll in an inpa-

---

1. Tritt was convicted of violating former AS 11.20.525, which dealt with damaging an aircraft. The maximum penalty was ten years and a $10,000 fine. Under current law, Tritt would have been subject to a maximum sentence of five years. *See* AS 11.46.482; AS 12.55.125(e).

2. U.S.Const. amend. V; Alaska Const. art. 1, § 9.

tient alcohol rehabilitation program by September of 1978. The sentence for maliciously damaging an aircraft was made consecutive to the prior sentence on the ADW charge. A petition to revoke probation on the ADW charge was apparently filed after Tritt's arrest for damaging an aircraft; however, revocation proceedings were not actively pursued, and Tritt remained on probation.

Tritt failed to report to his alcoholism program in September 1978; he similarly failed to make restitution for the damaged aircraft. In October 1978, a petition to revoke Tritt's probation on the aircraft charge was filed in Fairbanks, and, since his whereabouts were unknown, an arrest warrant was issued. On January 10, 1979, Tritt was arrested in Anchorage after robbing a liquor store at gunpoint; he was thereafter indicted for armed robbery.

Soon after his arrest in Anchorage, Tritt was returned to Fairbanks, where his probation on the suspended imposition of sentence for his first conviction, ADW, was revoked; he was sentenced to serve a three-year term on that charge in March 1979. In July 1979 Tritt was returned to Anchorage, entered a guilty plea to the charge of robbery, and received a sentence of five years, with two suspended. This sentence was to be served concurrently with his recently imposed ADW sentence and his suspended sentence for damaging an aircraft.

After sentencing on the robbery in Anchorage, Tritt was again sent to Fairbanks, where, on September 26, 1979, he was found to have violated the conditions of his probation on the charge of damaging an aircraft. His probation on that charge was revoked, and the court imposed the full three-year term originally suspended. The sentencing court specified that the sentence was to be consecutive to both his three-year sentence for ADW and his five-year sentence (with two years suspended) for robbery. It is this sentence which is the subject of Tritt's appeal.

II

## THE DOUBLE JEOPARDY CLAIM

Tritt contends initially that consecutive imposition of his three-year sentence after revocation of his probation for damaging an aircraft constitutes an impermissible increase of his original sentence. Tritt relies for this contention primarily on *Sonnier v. State*, 483 P.2d 1003 (Alaska 1971). We cannot agree.

It was appropriate, upon revocation of Tritt's probation, to impose his sentence for damaging an aircraft consecutively to his three-year sentence for ADW. Tritt's original three-year suspended sentence for damaging an aircraft was specifically made consecutive to the sentence on his earlier ADW conviction. Thus the court's decision, after revoking Tritt's probation for damaging an aircraft, to impose sentence consecutively to his ADW sentence conformed to its original judgment. The consecutive sentence was not a new or additional component of Tritt's originally suspended sentence, and no increase resulted therefrom.

Tritt argues, however, that the court was precluded from imposing its sentence consecutively to the sentence which he received on the Anchorage robbery. Tritt maintains that this, in effect, increased the robbery sentence. A similar claim was advanced but rejected in *Daniels v. State*, 584 P.2d 47, 49 (Alaska 1978). We think that *Daniels* is controlling here. The sentence imposed upon revocation of probation for damaging an aircraft did not prolong or otherwise alter Tritt's earlier sentence for robbery, the terms of which remained constant.

Tritt emphasizes, though, that the sentencing judge on the Anchorage robbery conviction specifically intended his sentence to be concurrent with Tritt's sentence on the charge of damaging an aircraft. Tritt argues that, since it was intended that the robbery sentence be concurrent with whatever sentence he might receive upon revocation of probation for damaging an aircraft, the intent of the judge who imposed the robbery sentence must govern, foreclosing a

subsequent consecutive sentence after revocation of probation for damaging an aircraft.[3] But this argument is unconvincing. Regardless of the intent of the sentencing court on the robbery charge, it had no authority to restrict the lawful sentencing options of the judge who later sentenced Tritt upon revocation of his probation for damaging an aircraft.

■ At the time of Tritt's sentencing, the authority to impose consecutive sentences was provided for by AS 11.05.050, which stated, in pertinent part:

If the defendant is convicted of two or more crimes, before judgment on either, the judgment may be that the imprisonment upon one conviction begins at the expiration of the imprisonment for any other of the crimes. If the defendant is imprisoned upon a previous judgment on a conviction for a crime, the judgment may be that the imprisonment commences at the expiration of the term limited by the previous judgment.[4]

A plain reading of this statute reveals that it is a grant of authority, or jurisdiction, affirmatively empowering sentencing courts to impose consecutive sentences. The scope of the statute is broad, and it has been held that:

AS 11.05.050 authorizes consecutive sentences whenever a defendant is convicted of multiple offenses. AS 11.05.050 does not contain limitations on the court's power to impose consecutive sentences.[5]

Under the language of this statute, when multiple convictions occur, each sentencing judge is specifically vested with authority to impose a sentence consecutive to any sentence imposed, or to be imposed, on the other convictions. Nothing in the statutory language, either express or implied, indicates that the decision of one judge not to impose a consecutive sentence on one of

several convictions can deprive another judge, sentencing for a separate conviction, from availing himself of the option to sentence consecutively. We must therefore reject Tritt's claim that imposing his sentence for damaging an aircraft consecutively to his sentence for bank robbery impermissibly increased the robbery sentence.

The final facet of Tritt's double jeopardy argument raises an issue of first impression in Alaska. Tritt maintains that, since his originally suspended sentence for damaging an aircraft was made consecutive only to his initial ADW conviction, the fact that the three-year sentence which was imposed upon revocation of probation was made consecutive not only to his prior ADW sentence, but also to the sentence for his subsequent robbery, constitutes a prohibited increase of the term originally suspended.

■ After revoking probation on a suspended sentence, a court may impose any term of imprisonment up to and including the term originally suspended. *Paul v. State*, 560 P.2d 754, 758 & n.8 (Alaska 1977). It is equally well settled, however, that the sentence imposed may not exceed or increase the term originally suspended. *Nelson v. State*, 617 P.2d 502, 503 (Alaska 1981); *Shagloak v. State*, 582 P.2d 1034, 1036–38 (Alaska 1978); *Franzen v. State*, 573 P.2d 55, 56–57 (Alaska 1978); *Huff v. State*, 568 P.2d 1014, 1016 (Alaska 1977); *Jackson v. State*, 541 P.2d 23, 26 (Alaska 1975). *See also* AS 33.05.070(b). The precise question presented is whether an increase in sentence occurs when, upon revocation of probation, an originally suspended term is imposed consecutively to a sentence imposed for an offense occurring in the interim between suspension of the original sentence and its subsequent imposition after revocation of probation.

3. From the record of Tritt's sentencing proceedings on the armed robbery, it appears that the intent of the sentencing judge was, in fact, to require that the robbery sentence be served concurrently with whatever sentence Tritt might subsequently receive upon revocation of probation for his earlier conviction of damaging an aircraft.

4. Similar provisions are now contained in AS 12.55.025(e).

5. *Thomas v. State*, 566 P.2d 630, 635 (Alaska 1977) (footnote omitted).

While no cases address this issue in Alaska, a number of federal cases have uniformly held that, upon revocation of probation, the sentencing court has the right to impose its sentence consecutively to sentences imposed for intervening offenses. *United States v. Lustig*, 555 F.2d 751, 753 (9th Cir. 1977); *United States v. Bartholdi*, 453 F.2d 1225, 1226 (9th Cir. 1972); *United States v. Tacoma*, 199 F.2d 482 (2nd Cir. 1952). *See also United States v. Liddy*, 510 F.2d 669 (D.C.Cir.1974), *cert. denied*, 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975). Moreover, in at least two sentence appeals, the Alaska Supreme Court has specifically upheld sentences imposed upon revocation of probation which were made consecutive to sentences for intervening crimes. *Preston v. State*, 583 P.2d 787 (Alaska 1978); *Adams v. State*, 521 P.2d 516 (Alaska 1974).[6]

The situation involved here is distinguishable from that which was considered in the Alaska Supreme Court's recent decision in *Nelson v. State, supra* at 502. There, the court held that the addition for the first time upon revocation of probation of a requirement that the defendant serve a mandatory portion of his jail sentence prior to becoming eligible for parole constituted an impermissible increase of the sentence originally suspended. Two important distinctions can be drawn between *Nelson* and this case.

First, when upon revocation of probation a provision for mandatory jail time prior to eligibility for parole is added for the first time, that provision obviously has a direct effect on the length of the time the defendant will actually be required to serve on the sentence for which probation was revoked. The minimum amount of time which the defendant might have served under the terms of his originally suspended sentence is at least potentially increased. By contrast, the imposition upon revocation of probation of a term of imprisonment consecutive to a term received for an intervening offense does nothing to alter or increase the period of time provided for under the original sentence; it affects only the time at which the defendant will be required to begin serving his term of imprisonment upon the revocation. In this case, for example, any time which Tritt might serve beyond the term provided for in his originally suspended three-year sentence will be attributable not to any increase of that original sentence, but rather to the fact that he will be serving a sentence separately imposed for the crime of robbery.

A second, equally significant, distinction exists between this case and *Nelson*. In *Nelson*, the sentencing court, at the time it originally suspended execution of its sentence, had the authority and ability, before suspending the sentence, to require a mandatory period of confinement prior to eligibility for parole. Thus the court's failure, at the time of the original sentencing, to require specifically that a mandatory portion of the term be served prior to eligibility for parole might have reflected an intent on its part to require no such minimum period of time to be served in the event of a later revocation. The court's subsequent addition, upon revocation of probation, of such a requirement could well amount to a decision on its part to change the conditions of the originally suspended sentence in a manner which impermissibly results in a longer period of time to be served by the defendant. Here, on the other hand, at the time of Tritt's original sentencing for damaging an aircraft, the court was authorized by the express terms of AS 11.05.050 to sentence consecutively only as to crimes for which the defendant had already been convicted at the time of sentencing. This the court did. The court had no power to make its sentence consecutive as to crimes for which there had not yet been a conviction. Since the court in Tritt's case could not lawfully have imposed its original sentence consecutively as to crimes not yet committed, its failure to do so gives rise to no inference that it intended that Tritt's sentence, upon a future revocation of probation, should be imposed concurrently with other sentences which might then exist.

6. *Cf. Oksoktaruk v. State*, 619 P.2d 480 (Alaska 1980).

■ For these reasons, we believe that the decision of the Alaska Supreme Court in *Nelson* does not apply in the context of this case. When it was originally imposed, Tritt's suspended sentence for damaging an aircraft carried with it the potential that he might, in the future, be required to serve the full suspended term. *Paul v. State, supra* at 758. Similarly, we believe that an implicit part of Tritt's originally suspended sentence was the potential that a term imposed following revocation of probation could be made consecutive to any sentence imposed upon him for separate crimes of which he might then stand convicted. Consequently, we conclude that, upon revocation of probation, imposition of a term of imprisonment consecutive to another term for an intervening offense does not impermissibly enlarge or enhance the scope of the sentence which was originally suspended. The consecutive imposition of Tritt's sentence following revocation of his probation for damaging an aircraft did not violate his double jeopardy rights.

## III

### EXCESSIVENESS OF THE SENTENCE

■ We turn now to Tritt's argument that his sentence was too severe. Imposition of sentence upon revocation of probation is within the sound discretion of the trial court. *Jackson v. State*, 541 P.2d 23, 26 (Alaska 1975); *Martin v. State*, 517 P.2d 1399, 1403 (Alaska 1974). The sentencing court is entitled to consider all available information as to the defendant and is not limited to the circumstances as they existed at the time his sentence was originally suspended. *Shearer v. State*, 619 P.2d 726, 727 (Alaska 1980).

7. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

8. *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

9. Sentences of over five years are appropriate only in cases involving particularly serious crimes, dangerous offenders, or professional criminals. *See, e. g., Donlun v. State*, 527 P.2d 472, 475 (Alaska 1975). Under current sentencing law Tritt would have been subject to a

■ Bearing these considerations in mind, we are unable to conclude, after independently reviewing the record, that the sentencing court was clearly mistaken in this case.[7] In passing sentence, the court appropriately took into account all of the relevant sentencing objectives.[8] Tritt's prior and subsequent offenses, both of which were committed when he was severely intoxicated and which involved serious acts of criminal violence in which deadly force was either used or threatened, when taken together with Tritt's inability to control his behavior when consuming alcohol and his corresponding failure to deal with his drinking problem in a realistic manner, support the court's conclusion that a substantial period of isolation from the community was warranted. *Pike v. State*, 570 P.2d 1066 (Alaska 1977).

■ Likewise we think that here the imposition of the sentence consecutive to Tritt's sentences for ADW and robbery, which run concurrently with each other, was appropriate in order to provide an additional, distinct sanction to impress upon Tritt the gravity of his violation of the terms of his probation. *Daniels v. State*, 584 P.2d 47, 49 (Alaska 1978). Even considering Tritt's overall six-year term of imprisonment, we believe his sentence to be justified by the record. Tritt may fairly be considered a dangerous offender for whom a term of more than five years is justified.[9]

■ Tritt argues specifically that his sentence was too severe because it forecloses immediate placement in a minimum security facility where greater opportunities for rehabilitation exist. However, Tritt is not entitled to placement in any particular program or to receive any particular type of

two-year presumptive term at the time of sentencing. *See* AS 12.55.125(e)(1). Both aggravating and mitigating factors are present in the case. *See* AS 12.55.155(c)(7), (12) & (d)(9). We do not rule on whether Tritt's sentence would have been appropriate under current law; we simply observe that it is not disproportionate to current legislative indications of the appropriate punishment for an act of this nature.

therapy as part of his sentence. *Good v. State*, 590 P.2d 420 (Alaska 1979); *Johnson v. State*, 580 P.2d 700, 703 (Alaska 1978). Similarly, it was not the sentencing court's function to classify Tritt to a particular institution. *Rust v. State*, 582 P.2d 134 (Alaska 1978). The court's chief duty in structuring a sentence was to determine the relative priorities to be given to established sentencing objectives. *Johnson v. State, supra* at 703; *Asitonia v. State*, 508 P.2d 1023, 1024 n.4 (Alaska 1973). In so doing, the court was under no obligation to assign paramount importance to the goal of rehabilitation. *Shearer v. State, supra* at 728 & n.5. Since the information in this case justified the conclusion that Tritt was a particularly dangerous offender with little insight into his problems and virtually no ability to deal with them, emphasis by the court on protection of the community was appropriate; the need for rehabilitation was recognized and adequately provided for by the

court's recommendation that Tritt receive psychiatric treatment and alcohol rehabilitation therapy. *Good v. State, supra* at 423–25; *Johnson v. State, supra* at 703 n.7. Under these circumstances, the court's decision to impose a sentence under which Tritt might not be immediately eligible for placement in a minimum security facility was not clearly mistaken.[10] Moreover, even given this sentence, Tritt remains eligible for a rehabilitation furlough to an appropriate treatment facility in the discretion of the Division of Corrections.[11]

We AFFIRM the superior court's judgment.

10. This case is markedly different from *Kanipe v. State*, 620 P.2d 678 (Alaska 1980) and *Ahvik v. State*, 613 P.2d 1252 (Alaska 1980), which involved nineteen- and eighteen-year-old defendants, respectively, who had insignificant criminal records and no background of failure at efforts of rehabilitation. In both of those cases, the Alaska Supreme Court reversed sentences which made the defendants ineligible to serve their terms in institutions providing specialized rehabilitative programs. By contrast, Tritt is twenty-two years of age and has now committed his third felony, and his second and third felonies were committed while he was on probation. All of Tritt's crimes have involved violent conduct carried out under extreme intoxication. He has repeatedly failed to respond to rehabilitative efforts and has demonstrated a clear inability to control his own behavior when drinking. We note that, under such circumstances, a longer period of incarceration

without immediate classification to a minimum security facility may, in the long run, be compatible with the goal of rehabilitation of the offender. *Shagloak v. State*, 582 P.2d 1034, 1040 (Alaska 1978).

11. *See* AS 33.30.260; 7 A.A.C. 60.200–265 & 315–330. Under the policy guidelines implementing these provisions, medical or psychiatric furlough is available at any time, upon recommendation by the classification committee and the institutional superintendent. *See* Alaska Department of Health and Social Services, Division of Corrections, Rehabilitation Furlough Policy, Section 401. In revoking probation and imposing sentence, the court specifically included a recommendation that Tritt be placed in Akeela House, Inc., an Anchorage facility providing alcohol rehabilitation.