**Jeffrey PASCO, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF ADMINISTRATION, DIVISION OF MOTOR VEHICLES, Appellee.**

**No. S–9920.**

Supreme Court of Alaska.

April 12, 2002.

Dennis P. James, Anchorage, for Appellant.

Marilyn J. Kamm, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Jeffery Pasco attempted to operate a Plymouth station wagon while he was significantly intoxicated. He claimed at his administrative license revocation proceeding that he was trying to move the vehicle because it was on fire and the fire threatened his nearby home. The hearing officer rejected this "necessity" defense. We affirm, because substantial evidence supports the hearing of-

ficer's finding that Pasco was not attempting to drive the car in response to an emergency.

## II. FACTS AND PROCEEDINGS

Jamie and Bruce Oskolkoff woke up very early on the morning of April 24, 1999 to a strange sound. They investigated and discovered that one of their next-door-neighbor's vehicles was on fire and that the engine was roaring. Jamie dialed 911 at about 3:15 a.m. and reported the incident to the operator while Bruce rescued their neighbor, Jeff Pasco, from the burning vehicle. Paramedics transported Pasco and Bruce to the local emergency room to treat them for illness related to smoke inhalation. The vehicle, a 1993 Plymouth station wagon, was completely destroyed by the fire.

Trooper Ted VanAntwerp contacted Pasco at the hospital and "observed Pasco to have red, watery eyes, and an odor of alcohol on his person." Pasco told Trooper VanAntwerp that he had consumed approximately seven drinks between 7:00 p.m. and 2:00 a.m. at the American Legion in Ninilchik, and had driven home shortly thereafter. After the treating physician determined Pasco was fit to leave, Pasco submitted to and failed a series of field sobriety tests in the hospital parking lot. Trooper VanAntwerp escorted Pasco to the Soldotna Alaska State Trooper station and administered an Intoximeter test. The test indicated a breath alcohol concentration of 0.177 percent at 6:45 a.m. VanAntwerp issued Pasco a Notice and Order of Revocation for driving while intoxicated, and Pasco requested a hearing to contest the revocation. Parallel criminal proceedings were dismissed by the state under Alaska Criminal Rule 43(a) on August 28, 1999.

The hearing officer affirmed the trooper's action in a telephonic hearing in July 1999 and revoked Pasco's privilege to drive for one year. Pasco appealed to the superior court, which affirmed the decision of the

Department of Public Safety in a Memorandum Decision in September 2000.

Pasco did not dispute the presence of any of the elements of the offense of driving while intoxicated in his hearing or in his appeal to the superior court. Rather, he argued that the defense of necessity should apply because he only attempted to drive while intoxicated in order to protect his home and dog against the risk of fire posed by the burning vehicle. His appeal to this court renews this defense and also raises due process challenges.

## III. DISCUSSION

### A. Standard of Review

■ Alaska Statute 28.15.166(m) sets out the standards applicable to the superior court's review of a driver's license revocation by the Department of Public Safety:

The judicial review shall be on the record, without taking additional testimony. The court may reverse the [hearing officer]'s determination if the court finds that the [hearing officer] misinterpreted the law, acted in an arbitrary and capricious manner, or made a determination unsupported by the evidence in the record.

Because we independently review the hearing officer's decision, we apply the same standard of review.[1] Accordingly, we apply the "substitution of judgment" test to legal questions not involving agency expertise,[2] and review factual findings to ensure they are supported by "substantial evidence."[3] We consider constitutional questions de novo.[4]

### B. Substantial Evidence Supports the Hearing Officer's Rejection of Pasco's Necessity Defense.

■ Pasco argues that his attempt to drive while impaired was reasonably necessary to prevent his house from catching on

1. *Williamson v. State, Dep't of Pub. Safety,* 779 P.2d 1238, 1239 (Alaska 1989); *Miller v. State, Dep't of Pub. Safety,* 761 P.2d 117, 118 n. 2 (Alaska 1988).

2. *Earth Res. Co. v. State, Dep't of Revenue,* 665 P.2d 960, 965 (Alaska 1983) (citation omitted).

3. *Williamson,* 779 P.2d at 1239 (construing AS 28.15.166(m) to require hearing officer's factual determinations to be supported by *substantial* evidence) (emphasis added).

4. *State v. Anthony,* 810 P.2d 155, 156–57 (Alaska 1991).

fire. Pasco is required to prove three elements to prevail on his necessity defense:[5]

(1) The act charged must have been done to prevent a significant evil;

(2) there must have been no adequate alternative;

(3) the harm caused must not have been disproportionate to the harm avoided.[6]

The first two elements are satisfied by a defendant's reasonable belief at the time of acting; as to the last element, the court makes an objective determination whether the defendant's value judgment was correct.[7] The hearing officer found that Pasco did not satisfy the first element of the defense because she did not believe that Pasco was attempting to drive his vehicle in response to an emergency. She further held that, even assuming Pasco's story was true, he did not satisfy the second and third elements of the test because he had adequate lawful alternatives to driving while impaired, and the harm caused was greater than the harm avoided.

To satisfy the first element of the necessity defense, Pasco must prove that he only attempted to drive the vehicle away from his house to prevent a significant risk posed to his house and dog by the burning vehicle. If substantial evidence supports the hearing officer's finding that Pasco was not behind the wheel for this reason, his defense fails. We affirm the hearing officer's rejection of the defense because substantial evidence undermines Pasco's version of the circumstances surrounding his attempt to drive the car. Accordingly, we need not address the second and third elements of the defense.

Pasco testified at the hearing that as he was preparing for bed in the early morning hours, he looked outside and noticed smoke coming from the vehicle. He thought the smoke was caused by an electrical fire, and decided to open the hood in order to disconnect the battery. Unable to open the hood from outside the vehicle, Pasco entered the passenger compartment in search of the hood release mechanism. Once inside the vehicle, Pasco saw flames coming from the hood and became concerned about the safety of his dog and home. Pasco provided no evidence that the vehicle was sufficiently close to his house to constitute a significant threat.

In an affidavit supplied to the superior court, Pasco admitted that his memory of the next sequence of events is "sketchy." He relied in part on information supplied by the neighbor who rescued him, Bruce Oskolkoff. Pasco testified that the vehicle suddenly roared to life as he was attempting to find the hood release.[8] When the engine began to race, Pasco tried to "drop the throttle" to shift the vehicle into gear and move it away from his house. The interior of the vehicle filled with smoke. Pasco then saw flames coming from underneath the firewall into the passenger compartment and decided that he "was in way over [his] head and [he'd] better get out." "The next thing I remembered was Bruce having his hand under my arm, yelling to me to get out."

Pasco did not tell any part of this story to Trooper VanAntwerp. Pasco told VanAntwerp that he had consumed approximately seven drinks between 7:00 p.m. and 2:00 a.m. at the American Legion bar in Ninilchik, and

---

**5.** At least two courts have held that the defense of necessity is unavailable in civil license revocation proceedings. *Foster v. Snyder*, 76 Cal. App.4th 264, 90 Cal.Rptr.2d 207, 213 (1999); *State v. Pollander*, 167 Vt. 301, 706 A.2d 1359, 1363 (1997). These courts, interpreting summary license revocation or suspension procedures identical to our own in all significant respects, found that the plain meaning of the statutes establishing these procedures precluded the defense of necessity. *Foster*, 90 Cal.Rptr.2d at 213; *Pollander*, 706 A.2d at 1363.

Because the parties did not brief the issue whether the defense is available, and because we affirm the hearing officer's determination that the defense fails on the merits, we assume for purposes of this case only that the defense applies to civil or administrative license revocation proceedings.

**6.** *Nelson v. State*, 597 P.2d 977, 979 (Alaska 1979) (citations omitted).

**7.** *Id.* at 980 n. 6 (citations omitted); *see also Cleveland v. Municipality of Anchorage*, 631 P.2d 1073, 1078 (Alaska 1981) (citations omitted).

**8.** Pasco suggested to the hearing officer that the vehicle "just started through being hot wired ... the wires could have touched each other, they were melting." Perhaps not fully convinced by his own testimony, Pasco later affixed that he may have played a more active role in starting the vehicle.

had driven home shortly thereafter. At the hearing, however, Pasco recanted most of his earlier statements to Trooper VanAntwerp. He testified that he actually left the American Legion around 12:35 a.m. after having at most four drinks there.[9] He explained that his substantial inebriation some six hours later was due to drinking approximately half a bottle of whiskey after arriving home while watching television, reading his mail, and generally relaxing. When asked about the omissions and discrepancies between his testimony and his statement to Trooper VanAntwerp, Pasco explained that he had been confused due to a combination of sleep deprivation and smoke inhalation, and also that he had been afraid to admit to the trooper that he had been drinking. Pasco's position, therefore, is that he was not impaired while driving home from the bar, and that he only attempted to drive while impaired in order to save his house and dog.

The hearing officer did not find Pasco's testimony credible. She was "struck by how [Pasco's] testimony is marked with inconsistency and reconstruction due to . . . lack of recall to the actual event." She did not believe Pasco's explanation for failing to tell his story to the trooper. After noting that "[t]he trooper's information was that [Pasco] had fallen asleep behind the wheel,"[10] she concluded as follows:

> I don't find your testimony credible about the circumstances about the vehicle starting[,] and I really need to stress to you that it was your testimony and the credibility of your testimony and the difference between what you told the officer[ ] and what you testified to and your inability to recall and that [you were] just simply reconstructing . . . was very important to me.

The hearing officer's disbelief is supported by substantial evidence. Pasco's account from the time he entered the vehicle until Bruce rescued him is largely reconstructed from conversations with Bruce. Further, his testimony contradicts his statements to Trooper VanAntwerp on the morning of the fire and VanAntwerp's sworn statement to the hearing officer. Pasco sought to characterize these contradictions as the innocent effects of inebriation, exhaustion, smoke-inhalation, and fear of the legal consequences that might follow if he admitted to attempting to operate the vehicle while intoxicated. But Pasco's hearing testimony is inconsistent in precisely those respects necessary to establish a necessity defense. Aside from Pasco's suspect credibility, his version of the events leading up to the fire is highly implausible. Accordingly, we will not reverse the hearing officer's determination that Pasco's testimony was not credible.[11]

Because we conclude that substantial evidence supports the hearing officer's determination that Pasco failed to satisfy the first element of the test, we need not determine whether Pasco had adequate lawful alternatives besides operating the vehicle while intoxicated, or whether the harm caused by his illegal action was disproportionate to the harm avoided.

## C. Pasco Waived His Due Process Claims by Failing to Raise Them Below.

Pasco limited his argument before the hearing officer and the superior court to his necessity defense. He raises several due process claims for the first time in his opening brief to this court, and another argument for the first time in his reply brief. In

---

**9.** Pasco corroborated this part of his story by submitting to the hearing officer several signed, unsworn statements of friends who had been with him at the bar. The hearing officer discounted the evidentiary value of these statements because Pasco's friends did not testify under oath at the hearing and were not subject to cross-examination.

**10.** The hearing officer observed at the outset of the hearing that Trooper VanAntwerp "personally appear[ed]" before her and submitted a sworn statement. Among other facts also found in his

report, the trooper stated that he initially contacted Pasco "after [Pasco] was taken by an ambulance to the hospital after falling asleep in a car." Pasco did not request Trooper VanAntwerp's presence at the hearing.

**11.** We recently noted that the hearing officer "is in the best position to evaluate the witnesses' credibility and their testimony." *Whitesides v. State, Dep't of Pub. Safety,* 20 P.3d 1130, 1136 (Alaska 2001) (citation omitted).

general, we will not consider arguments raised for the first time on appeal.[12] This rule applies with equal force to arguments never presented to an agency whose decision is appealed.[13] However, application of this rule "presupposes an opportunity to present objections to the agency before a decision is rendered by that agency."[14] Several of Pasco's claims did not arise until the officer issued her decision; therefore, he did not have an opportunity to raise them before the agency. Pasco offers no explanation, however, for why he did not make these arguments in the superior court. Accordingly, they are waived.

## IV. CONCLUSION

Because the hearing officer's rejection of the first element of Pasco's necessity defense is supported by substantial evidence, we AFFIRM the superior court's affirmance of the hearing officer's one-year revocation of Pasco's driver's license.

**12.** *Williams v. Alyeska Pipeline Serv. Co.,* 650 P.2d 343, 351 (Alaska 1982); *see also Estate of Lewis v. State, Commercial Fisheries Entry Comm'n,* 892 P.2d 175, 180 n. 9 (Alaska 1995) (holding due process complaints not raised below waived on appeal).

**13.** *Amerada Hess v. Alaska Pub. Utils. Comm'n,* 711 P.2d 1170, 1181 n. 22 (Alaska 1986).

